A93A0800. REPUBLIC CLAIMS SERVICE COMPANY
v. HOYAL.
(435 SE2d 612)

BIRDSONG, Presiding Judge.

We granted interlocutory appeal to review the trial court's refusal to dismiss this lawsuit under OCGA § 9-2-60.

Joe Hoyal, pro se, filed suit against Republic Claims Service Company in March 1987. Republic answered and filed a counterclaim for Hoyal's "wilfully" filing a lawsuit "without substantial justification." Trial was set for August 27, 1987, but Republic got an oral continuance. The parties then agreed to a settlement but Republic's counsel refused to send the settlement and release by mail. Never having received a settlement, Hoyal amended his complaint in January 1991. Republic answered and Hoyal moved for trial in August 1991. From then until March 1992, he pressed for trial. In February

1992, Republic filed a conflict letter, and thereafter the trial was continued again. In April 1992, Republic filed a motion to dismiss the case for lack of a "written order" in five years.

The trial court denied Republic's motion, finding: "There have been several recent filings in the case by both plaintiff and defendant. . . . As plaintiff has announced ready for trial on numerous occasions, and the case has not been reached for trial by this court through no fault of plaintiff, plaintiff should not be penalized in the dismissal of his action." The court's docket sheet, showing several continuances and trial resettings, was forwarded to this court by Hoyal as an attachment to his brief. The court docket sheet is not a part of this record and in construing the statute, we do not consider matters aliunde the record (*Sunn v. Trophy Marine*, 176 Ga. App. 68 (334 SE2d 884)); but we take judicial notice that orders of continuance are entered in the court docket and Republic does not contend the orders of continuance in this case were not entered in the docket.

OCGA § 9-2-60 (b) provides: "Any action or other proceeding filed in any of the courts of this state in which no written order is taken for a period of five years shall automatically stand dismissed with costs to be taxed against the party plaintiff." Republic contends this language is unambiguous and that dismissal is mandated. *Dept. of Med. Assistance v. Columbia Convalescent Center*, 203 Ga. App. 535, 536 (417 SE2d 195). *Held*:

1. If defendant's "orders" of continuance "written" in the docket were good enough to stop plaintiff from getting a trial for five years, they are good enough to stop defendant from being rewarded with a dismissal. The term "written order" in OCGA § 9-2-60 is too uncertain to justify penalizing the plaintiff in this case. This case does not deserve to be dismissed. It was gravid with life. It was not settled because defendant refused to send the settlement in the mail, and it never went to trial because defendant kept getting oral continuances until it could move for dismissal on grounds the case was "dead."

Joe Hoyal contends Republic contrived to put him off and kept the case confused, and so it appears. For instance, Republic on June 19, 1987, wrote: "[This is] an unconditional offer to settle all of *your* claims. . . . [T]he offer to settle *your* claims . . . is a firm offer." (Emphasis supplied.) Hoyal replied: "You have failed to mention in your letter the fact that [you] . . . filed a counterclaim against me." Republic's attorney replied: "You have misconstrued the terms of my letter of June 19, 1987. My letter . . . was an offer to settle *all claims*." (Emphasis supplied.) As is evident, however, Hoyal did not misconstrue that letter's terms.

OCGA § 9-2-60 was intended to prevent court records from being cluttered by "unresolved and inactive litigation." *Swint v. Smith*, 219 Ga. 532, 534 (3) (134 SE2d 595); *Lewis v. Price*, 104 Ga. App. 473 (122

SE2d 129). It was designed to protect litigants from dilatory counsel (*Swint*, supra), not to reward a dilatory defendant for dragging a case out. The plaintiff in *Swint* let his case languish for nine years before seeking trial, but this case was neither inactive nor unresolved.

OCGA § 9-11-1 requires us to construe the Civil Practice Act to secure the *just* determination, not merely the speedy determination, of every matter. OCGA § 9-2-60 is a forfeiture statute, in derogation of common law and it must be strictly construed. This means we cannot make more of the term "written order" than strictly appears. It is also a remedial statute in derogation of a party's constitutional rights, and is to be applied liberally so as not to damage those rights. See *Chance v. Planters Rural Tel. &c.*, 219 Ga. 1, 3 (131 SE2d 541). It should not be used to punish a party who strove to resolve his litigation and to reward the party who leached the life out of it.

The first rule of statutory construction is to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). The cardinal rule in construction of laws is, " ' " " 'first, to ascertain the legislative intent and purpose in enacting the law, and then to *give it that construction which will effectuate the legislative intent and purpose.*' [Cit.]" ' " (Emphasis supplied.) *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430). The "evil" addressed by OCGA § 9-2-60 — the prolongation of inactive or unresolved cases — does not exist here. This case was vibrant. The lack of a "written order," whatever that means, does not prove a case is inactive, and the existence of a "written order" does not prove a case is active. An illusory construction of the variable words "written order" will penalize Joe Hoyal for Republic's actions in prolonging the case orally until it could be dismissed. We may not presume the legislature intended such an absurd construction of the statute, leading to wholly impracticable and unjust consequences. *Hollowell*, supra; *State v. Livingston*, 222 Ga. 441, 442 (150 SE2d 648).

It is suggested that we may not consider equities, for equity follows the law and cannot be used to violate express provisions of a statute. See *Persoll v. Scott*, 64 Ga. 767. This might be the case if by some "express provision" OCGA 9-2-60 defined a "written order" as one signed by the judge, but it does not. The meaning of "written order" in OCGA § 9-2-60 is so unclear that it has been debated often and with too varied results, as proved by the many cases annotated to the statute and by the cases cited by the dissent. The idea that the judge must sign a written order does not come from the statute but from case law. See *Ga. Power Co. v. Whitmire*, 146 Ga. App. 29, 30-31 (245 SE2d 324); *Majors v. Lewis*, 135 Ga. App. 420 (218 SE2d 130). There being no "express provision" in the statute defining the words "written" and "order," the equities of the parties may be considered

in order to effect the true purpose of OCGA § 9-2-60. See *Persoll*, supra. Moreover, OCGA § 1-3-1 (c) provides: "A substantial compliance with any statutory requirement . . . shall be deemed and held sufficient."

A grant of continuance is an "order." OCGA § 9-2-60 (a). When it is entered in the docket, it is "written" and has the force of law. OCGA § 9-10-169. According to OCGA § 1-3-3 (23), " '[w]riting' includes printing." The dismissal statute does not specify who must write an "order" or where it must be "written." It does not even require an "order" to be filed, but merely "taken." The term "written order" is so cloudy it has been deemed satisfied by a thing as unsubstantive (and dilatory) as a grant of leave of absence (*Loftin v. Prudential Property &c. Ins. Co.*, 193 Ga. App. 514 (388 SE2d 525)), or not satisfied by a thing as important (and diligent) as a rule nisi. *Beck v. Dean*, 177 Ga. App. 144 (338 SE2d 693).

On such flimsy words as "written order," we are not authorized to interpret OCGA § 9-2-60 (a) to deprive Joe Hoyal of his lawsuit, on the fiction that it was lifeless.

2. The "remedy" in OCGA § 9-2-60 (c), which allows plaintiff to refile his suit in six months, is a fictitious remedy for an illusory evil. If a case is really dead, it ought to be dismissed and not spawn more litigation. Under OCGA § 9-2-60 (c), a truly dead case can be refiled even though it is dead. The idea that OCGA § 9-2-60 (b) resolves inactive litigation by working a "mandatory automatic dismissal" is thus fairly ludicrous.

On the other hand, it is nonsensical to dismiss a living case on the fiction that it is dead, only to have it refiled because it was really not dead, with new claims for damages for a dismissal caused by unfair tactics (see OCGA § 23-2-56) or for acts imposed for delay or harassment or which "unnecessarily expanded the proceeding by . . . improper conduct." See OCGA § 9-15-14 (b), as amended. The "remedy" of OCGA § 9-2-60 (c), invoked when a living case is dismissed as "dead," creates unnecessary litigation. Even if plaintiff was unable to refile his case in six months, the prolongation of the case and defendant's invocation of a dismissal when it was defendant who refused to send the settlement or go to trial, might still be laid at defendant's feet by an excess litigation claim filed within forty-five days after "final disposition" on this appeal. OCGA § 9-15-14 (e).

The dismissal of Hoyal's case under a punitive, illusory interpretation of the vague words "written order" would do nothing to resolve this litigation. It would work an unnecessary injustice for an evil that never existed, on the justification that plaintiff has a feeble remedy. It would make no sense, for the refiling of a case which was dismissed as "lifeless" is simply more of the same litigation, exacerbated, which the legislature hoped to end. We will therefore not interpret the loose

language of OCGA § 9-2-60 to reward defendant for prolonging the case, for this would thwart the purpose of the statute, do real injustice to the plaintiff, and incite more litigation.

*Judgment affirmed. Pope, C. J., Beasley, P. J., Cooper, Blackburn and Smith, JJ., concur. McMurray, P. J., and Andrews, J., dissent. Johnson, J., not participating.*

ANDREWS, Judge, dissenting.

I respectfully dissent. OCGA § 9-2-60 (b) unambiguously provides: "[a]ny action or other proceeding filed in any of the courts of this state in which no written order is taken for a period of five years shall automatically stand dismissed with costs to be taxed against the party plaintiff." The dismissal provided for in the statute is automatic and it is mandatory. *Loftin v. Prudential Property &c. Ins. Co.*, 193 Ga. App. 514 (388 SE2d 525) (1989). The dismissal results as a "matter of law, and the court has no discretion to order it reinstated." *Dept. of Med. Assistance v. Columbia Convalescent Center*, 203 Ga. App. 535, 536 (417 SE2d 195) (1992). The statute should be construed according to its explicit terms and the trial court erred in not dismissing this case since no order had been entered in more than five years. See generally *Swint v. Smith*, 219 Ga. 532 (134 SE2d 595) (1964); *Stephens v. Stovall & Co.*, 184 Ga. App. 78 (360 SE2d 638) (1987).

The handwritten entry in the docket of the court-ordered continuance is not a written order under OCGA § 9-2-60 (b). Compare *Tillett Bros. Constr. Co. v. Dept. of Transp.*, 210 Ga. App. 84 (435 SE2d 241) (1993). Although subsection (a) of the statute provides that "an order of continuance will be deemed an order," no such order was entered here. See *Ga. Power Co. v. Whitmire*, 146 Ga. App. 29 (245 SE2d 324) (1978) (neither the judge's notation of continuance in docket, nor calendar assigning case for trial constituted an order under the statute); *Harris v. Moody*, 144 Ga. App. 656 (242 SE2d 321) (1978) (dismissal affirmed despite plaintiffs' contention that an agreement to continue the case between counsel was sufficient to avoid the mandatory dismissal provisions, since the plaintiffs had the duty to obtain a written order to that effect and enter it in the record); *Salter v. Chatham County*, 136 Ga. App. 914 (1) (222 SE2d 638) (1975) (the rule is mandatory and "places squarely upon the plaintiff the duty to comply with the law and to obtain a written order of continuance or other written order at some time during a five-year period and to make sure the same is entered in the record"); *Johnson v. McCauley*, 123 Ga. App. 393 (181 SE2d 111) (1971) (no written order of continuance contained in the record; therefore denial of motion to set aside the judgment of dismissal affirmed).

The concern the majority expresses regarding the harshness of

this rule is ameliorated by subsection (c) of the statute. This subsection evidences a general legislative intent to avoid unfairness and harsh results, and provides a specific remedy in situations like the instant one, in which an active case falls under the mandates of OCGA § 9-2-60 (b).

I am authorized to state that Presiding Judge McMurray joins in this dissent.

## On Motion for Reconsideration.

Republic contends we based our decision on evidence outside the record. The decision, however, is based on a strict construction of the term "written order" in OCGA § 9-2-60, which is not expressly defined and which is too uncertain to mandate a dismissal of a suit which was neither inactive nor unresolved. OCGA § 9-2-60 is a forfeiture statute; it must be strictly construed and liberally applied to work a *just* determination of every suit. OCGA § 9-11-1.

Contrary to Republic's assertions, evidence of Republic's dilatory tactics is in the record and is relevant to show the injustice that can be worked by a careless construction of OCGA § 9-2-60. Republic's counsel's June 19, 1987 letter offering to settle only Hoyal's claims appears in the record. On motion for reconsideration, Republic urges facts not in the record, to wit, that its counsel "offered to go to Hoyal's house to deliver the release and settlement check [or] to meet Hoyal in counsel's office to pay the settlement in exchange for the *signed* release. . . . The obvious danger . . . in mailing the release and settlement check to Hoyal is that Hoyal would cash the settlement check and refuse to sign the release." However, Republic could have sent the release to be executed before it sent any money. The record shows Hoyal wrote Republic's counsel in July 1991, asking him to "send me the release by mail and I will sign it and return it to you"; and Republic's counsel wrote Hoyal instructing him to come to Republic's counsel's office, and "I shall prepare a Release . . . and [pay] the settlement funds of $300.00 *after you have signed the Release*." (Emphasis supplied.) Hoyal filed these letters in the record, with a letter to the clerk asking that the case be put on the next jury calendar and stating that he had tried every way he knew to settle the case but that Republic's counsel was "just playing games" and that "I have [phoned and written] him many times and ask[ed] that he please send me the release by mail and I will sign it and return it to him — however he always finds a way to continue this harassment towards me. . . . I would never invite anyone to my home that has treated me like [he] has done for the past few years. He can send me the money by mail or we will go to court." The record thus shows that Republic would not effect the settlement without forcing Hoyal to a

personal confrontation which Hoyal found harassing and oppressive.

To illustrate the unfairness of a dismissal of an active case which the defendant has prolonged, we note another letter apparently from Republic's counsel attached to Hoyal's brief, which, if authentic, shows that after the trial court denied Republic's motion to dismiss and after Republic filed a notice of appeal, Republic's counsel wrote Hoyal: "I am enclosing a copy of the October 5, 1992 letter [which you refused to accept by certified mail]. Please read the letter carefully. *You have thirty days from the date of this letter to voluntary withdraw, abandon, discontinue, or dismiss [your] lawsuit.*" (Emphasis supplied.) Inasmuch as Republic's motion for dismissal had been denied and the case was still legally pending, this demand and the implicit threat by Republic's counsel invite scrutiny under any claims Hoyal may file under OCGA § 9-15-14.

The *record* proves the parties agreed to settle this case for $300 in 1987, but Republic refused to effect the settlement and Hoyal's efforts to get a trial were thwarted through no fault of his own, as the trial court found. This case is the paradigm to prove the injustice that would be worked by construing loose words in OCGA § 9-2-60 to reward a dilatory defendant with an automatic dismissal.

*Motion for reconsideration denied.*

DECIDED JULY 16, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 

*Parkerson, Shelfer & Connell, George H. Connell, Jr.*, for appellant.

Joe Hoyal, *pro se*.